IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Eddie D. Bevelle, Jr., | ) | Case No.: 05-10543-BGC-13 |
| | ) | |
| Debtor. | ) | |
| | | |
| Eddie D. Bevelle, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 06-00148 |
| | ) | |
| Jefferson County, Alabama; | ) | |
| City of Bessemer, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion**

### I. Background

The defendant Jefferson County, Alabama wants to condemn real estate owned by the plaintiff-debtor Mr. Eddie Bevelle, Jr. The County intends to build a new county courthouse and new county administrative offices on that and other property. The property is located within the city limits of the City of Bessemer, Alabama, a co-defendant.

The complaint Mr. Bevelle filed against the County seeks to enjoin the County from continuing with a condemnation action the County filed against Mr. Bevelle in state court. The complaint Mr. Bevelle filed against the City of Bessemer is to prevent the City from vacating an alleyway near his property.

The specific matters before the Court are:

1. A <u>Complaint to Enjoin Vacation of Alley Right-of-Way and to Enjoin Condemnation Proceedings, Demolition of Property and for Violation of Automatic Stay</u> filed on July 28, 2006, by the Plaintiff-Debtor (Proceeding No. 1);

2. A <u>Motion for Expedited Hearing or Temporary Restraining Order</u> filed on July 28, 2006, by the Plaintiff-Debtor (Proceeding No. 2);

3. An Answer and Counter-Claim of Jefferson County filed on August 16, 2006 (Proceeding No. 8);

4. A First Amendment to Answer and Counter-Claim of Jefferson County filed on August 17, 2006 (Proceeding No. 9);

5. A Motion for Relief from Stay filed on August 21, 2006, by Jefferson County (Proceeding No. 11);

6. A Motion to Abstain filed on August 21, 2006, by Jefferson County (Proceeding No. 12); and

7. An oral Motion to Dismiss by the City of Bessemer.

After notice, a hearing was held on August 23, 2006.[1] Appearing were Mr. Eddie Bevelle, Jr., the Debtor; Mr. Steven Altmann and Mr. Don Knowlton, attorneys for Mr. Bevelle; Mr. Michael Hall and Mr. Rashad Blossom, attorneys for Jefferson County, Alabama, along with Mr. Charles Wagner, Assistant County Attorney for Jefferson County, Alabama; The Honorable J. Scott Vowell, Presiding Judge of the Circuit Court for Jefferson County, Alabama; The Honorable Larry Langford, Chairman of the Jefferson County Commission; Mr. Billy Morace, Director of the General Services Department of Jefferson County, Alabama; Ms. Denise Blue Poe, attorney for the defendant City of Bessemer, Alabama; and Mr. Sims Crawford, the Chapter 13 Trustee.

All of the above matters were submitted to the Court on the testimony of Mr. Bevelle and Mr. Morace, two exhibits admitted into evidence, the pleadings, the record in the debtor's main bankruptcy case, the record in this adversary proceeding, and arguments of counsel.

As a general rule, when a bankruptcy case is filed, most actions pending against the person (the debtor) filing the case must stop, and none may be filed against that person without permission of the bankruptcy court. The legal process that creates this situation is called the "automatic stay." That "stay" is what prevents these certain actions against the debtor from proceeding. There are however a few actions that are excepted from this stay. Those actions are allowed to proceed regardless of the filing of the bankruptcy case.

When Mr. Bevelle filed his bankruptcy case the automatic stay arose, and he was protected from any pending, or to be filed, actions against him. Notwithstanding this protection, after Mr. Bevelle filed his bankruptcy, the County filed an action against

---

[1] The Motion for Relief from Stay and the Motion to Abstain were not scheduled for hearing on August 23, but all parties agreed that the Court could consider them along with properly noticed matters.

2

him to condemn the real estate he owned in Bessemer, Alabama. The controversy that exists now is whether the County's action was one of the few excepted from the "automatic stay" or whether the County was required to get the permission of this Court to file the condemnation action.

The complaint Mr. Bevelle filed against the County and the City of Bessemer contends that the governments' actions were not exempt from the "automatic stay" and therefore must stop, unless the governments obtain permission from this Court to continue, which Mr. Bevelle opposes. In addition, Mr. Bevelle asks this Court to administer the subject property within this bankruptcy case.

As discussed below, the Court disagrees with Mr. Bevelle. The Court finds that he is not entitled to an order temporarily restraining either government from continuing with their actions against him or his property. Specifically, the Court finds that the governments' actions are excepted from the automatic stay that arose under section 362 of the Bankruptcy Code when this case was filed.

## II. Findings of Fact

The facts necessary to decide the issue before this Court are the following.

The Debtor owns improved real estate, ("Debtor's property"), within the City of Bessemer, Alabama, which is within Jefferson County, Alabama. Jefferson County seeks to condemn that property to construct a new county courthouse and county administrative offices.[2]

The Debtor's property consists of three buildings.[3] He has from time to time leased two of the buildings to other individuals and operated a restaurant, Bevelle's Cafeteria, in the third building. He has operated the restaurant for about 15 years.[4]

The County wants to build the new county courthouse and administrative offices on the Debtor's property and other's. In addition to other reasons, the County wants to build the new facility because it has concerns about the security in its current facilities. Those concerns are that its current facilities do not meet recently established security

---

[2] The County also seeks to vacate an alley right-of-way adjacent to the Debtor's property. The County has asked the City of Bessemer, Alabama to take that action. The City believes that it should vacate the alleyway and has asked this Court to dismiss it from the pending lawsuit.

[3] See Jefferson County Exhibit 1.

[4] The Debtor operated the restaurant in leased space before moving to the current location.

3

standards. The County intends to incorporate those new standards, including some endorsed by the United States Marshal Service, into the proposed new courthouse.

The County contends that a new courthouse must be constructed in accordance with these new security requirements in order to protect the health and safety of its citizens. Those include the universally recognized requirements that new courthouses should be setback from public rights-of-ways and should have secure parking areas.

The county decided that the Debtor's property, along with others, was necessary for the location of the new courthouse.[5] The County offered to purchase the Debtor's property along with other's. The County and the Debtor could not agree on a price.

When the County could not purchase the Debtor's property, acting under the State of Alabama's eminent domain power, on September 2, 2003, the Jefferson County Commission authorized a condemnation proceeding against the debtor and others to acquire their property.[6] In the meantime, the County considered modifying the design of the build so that it could be built around the Debtor's property. Officials with the County decided that it could not change the building design and also meet currently recognized security and safety guidelines.

After the Debtor filed the pending Chapter 13 case on October 8, 2005, the County filed a Complaint for Condemnation against the Debtor and others. At the time of the trial before this Court, all of the property the County believes is necessary for the project had been purchased, except for the Debtor's property.

A trial on the merits of the County's Complaint for Condemnation is scheduled for September 8, 2006. The Debtor seeks to enjoin the County from proceeding with that action.

The County has offered to purchase the Debtor's property for $280,000. The Debtor rejected that offer. He testified that the value of his property, including a value for his ongoing restaurant business, is in excess of one million dollars. The debtor is currently indebted on the real estate subject to this controversy for about $134,000. According to the Debtor's testimony, the appraised value, according to the county tax assessor in March 2004, was $117,000.

---

[5] See the Complaint for Condemnation filed by the County, a copy of which is attached to the Debtor's complaint filed here as Proceeding No. 1, and Jefferson County Exhibit 2.

[6] The County is a political subdivision of the State of Alabama and as such may exercise the State's eminent domain powers.

### III. Issue

The determinative issue is: Did the automatic stay that arose in this case pursuant to section 362(a) of the Bankruptcy Code prevent the County from filing, and continuing with, condemnation of the Debtor's property? The simple answer is, no.

### IV. Contentions

At trial, the parties raised numerous other issues; however, because this Court finds that the automatic stay never barred the County from exercising its eminent domain powers in regard to the subject property, this Court need not decide any of those other issues.[7]

Notwithstanding other issues, the County contends that its condemnation action was exempt from the automatic stay and that it should be allowed to proceed with that action.

The Debtor contends that the automatic stay applied and that the County violated that stay when it filed the condemnation action. In addition, the Debtor contends that the County should pay more for the property, and the Debtor has asked this Court to determine that amount.[8]

### V. Conclusions of Law

#### A. Procedural

The Debtor seeks to restrain the defendants. The per curiam opinion in <u>Carillon Importers, Ltd. v. Frank Pesce International Group Limited</u>, 112 F.3d 1125 (11th Cir. 1997) lists the four requirements that must be met in order for this Court to issue a temporary restraining order. Those are, as adapted for the instant proceeding, that the Debtor must prove:

(1) There is a substantial likelihood that he will succeed at a trial on his complaint;
(2) He will suffer irreparable injury unless the defendants are enjoined;
(3) The injury threatened to him is greater than any damage the proposed injunction may cause the opposing party; and

---

[7] Many of those issues should remain unresolved for now as it is more appropriate that they will be considered by the state court when the County's condemnation proceeding is held on September 8, 2006.

[8] As this memorandum implies, that is a state law matter better left for the state court to decide.

5

(4) The injunction, if issued, will not disserve the public interest.

Id. at 1126.[9] All four requirements must be met.

As discussed below, the Court finds that the debtor failed to satisfy the first of these requirements, that is, the Court finds that there is not a substantial likelihood that the Debtor will succeed on the merits. Therefore, the Court finds that the request for a temporary restraining order should be denied.

## B. Substantive

Section 362(a) of the Bankruptcy Code reads in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title... operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

---

[9] Procedurally, a party filing a "complaint" for injunctive relief and a "motion" for temporary restraining relief, will prosecute the motion for temporary relief first. Regardless of the outcome, the "complaint" for injunctive relief would remain to be heard. That is the situation here. See Rule 65 of the Federal Rules of Civil Procedure, applicable to this proceeding by Rule 7065 of the Federal Rules of Bankruptcy Procedure. The hearing held on August 23, 2006, was a hearing on the request for temporary relief. It may be that the Court could now consider the hearing on the "motion" as a trial on the "complaint" for injunctive relief pursuant to Rule 65, but due to the pending counter-claim filed by the County, the Court does not choose to do so now. Consequently, the complaint for injunctive relief and related matters will be scheduled for a status conference in the normal course.

> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

11 U.S.C. § 362(a).

Section 362(b)(4) reads:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay –

> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

11 U.S.C. § 362(b)(4).

As explained in the introductory background to this opinion, when a bankruptcy case is filed an "automatic stay" arises pursuant to section 362(a) of the Bankruptcy Code. That "stay" stops most actions against a debtor or the debtor's property. But as section 362(b)(4) explains, some actions are exempted from that stay. Specifically mentioned in section 362(b)(4) is an exception for an action by a, "governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4). That provision is the primary exception that would apply in this situation. If that exception applies here, the County's condemnation action would be excepted, and the County would be allowed to proceed against the debtor. The general question then for this Court is whether the County's action is stopped by the stay or excepted from the stay.

To answer that question, the Court must answer three specific questions. First: Are a state's eminent domain power, and hence a county's condemnation action, a general exercise of "police or regulatory power" as described in section 362(b)(4) of the Bankruptcy Code? The second question then would be, if they are: What specific eminent domain actions would qualify as an exercise of a government's "police or regulatory powers? And the third question would be: Is this County's action one of the specific actions that would qualify as a government's "police or regulatory power?"

### 1. Are a state's eminent domain power, and hence a county's condemnation action, a general exercise of "police or regulatory power" as described in section 362(b)(4) of the Bankruptcy Code?

The answer to the first questions is yes. The United States Supreme Court held in Hawaii Housing Auth. v. Midkiff, 467 U.S. 229 (1984) that a state's eminent domain power is coterminous with its police powers. Therefore, this Court may conclude that, "A government agency's exercise of its eminent domain power may fall under the § 362(b)(4) exception...." In re Burgos, 294 B.R. 210, 211, n.1 (Bkrtcy. D.Conn. 2003) (citing In re PMI-DVW Real Estate Holdings, L.L.P., 240 B.R. 24, 30 (Bankr.D.Ariz. 1999)).

### 2. What specific eminent domain actions would qualify as an exercise of a government's "police or regulatory powers?"

The answer to this second question is, one of the eminent domain actions that would be within a state's police or regulatory power is one that is, "in the furtherance of public health, safety or welfare." Burgos at 30.

Writing for the Court in Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494 (1986), U.S. Supreme Court Justice Lewis F. Powell, Jr. explained:

> The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as "one of the fundamental debtor protections provided by the bankruptcy laws." S.Rep. No. 95-989, p. 54 (1978); H.R.Rep. No. 95-595, p. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840, 5963, 6296. Despite the importance of § 362(a) in preserving the debtor's estate, Congress has enacted several categories of exceptions to the stay that allow the Government to commence or continue legal proceedings. For example, § 362(b)(5) permits the Government to enforce "nonmonetary" judgments against a debtor's estate. It is clear from the legislative history that one of the purposes of this exception is to protect public health and safety:

> "Thus, where a governmental unit is suing a debtor to
> prevent or stop violation of fraud, environmental protection,
> consumer protection, safety, or similar police or regulatory
> laws, or attempting to fix damages for violation of such a
> law, the action or proceeding is not stayed under the
> automatic stay." H.R.Rep. No. 95-595, supra, at 343
> (emphasis added); S.Rep. No. 95-989, supra, at 52
> (emphasis added), U.S.Code Cong. & Admin.News 1978,
> pp. 5838, 6299.

Id. at 503-04 (footnote omitted).[10]

### 3. Is this County's action one of the specific actions that would qualify as a government's "police or regulatory power?"

The answer to the third question is, yes. With the determination that an exercise of eminent domain power in furtherance of public health, safety or welfare is captured by the exception of section 362(b)(4), based on the facts of this case, the Court finds that the County's action against this debtor is such an action.

The discussion by the court in In re PMI-DVW Real Estate Holdings, L.L.P., 240 B.R. 24 (Bankr. D. Ariz. 1999) about a case between the City of Jacksonville, Florida and a debtor regarding condemnation and demolition is helpful in determining how to apply the above-principles and how to make the factual determination of whether the County's actions are excepted from the automatic stay imposed under the Bankruptcy Code.

In PMI-DVW the court wrote:

The Court recognizes that traditionally in situations where there is an imminent health, welfare, or safety issue, that the government has a special interest in protecting its citizens and that the government may use its special police and regulatory power to afford such protection to its citizens. The exception allowed by 11 U.S.C. § 362(b)(4) allows a governmental unit to pursue actions to protect public health and safety, however Congress intended this exception to be given a narrow construction. H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787. An example of a situation where the automatic stay does not apply to a government's exercise of its power of condemnation has been noted in the case of Manuel v. City of

---

[10] Subsection (5) of section 362(b) referred to by Justice Powell was a parallel provision to the subsection (b)(4) involved here, but Justice Powell's comments are equally applicable to both. Subsection (b)(5) has since been omitted from the Bankruptcy Code.

9

> Jacksonville (In re Blunt), 210 B.R. 626 (Bankr. M.D. Fla.1997). In the
> Blunt case, the Chapter 7 Debtor owned and managed several rental
> properties, including an apartment complex that the City of Jacksonville
> demolished post-petition, and while the Debtor was protected by the
> automatic stay of 11 U.S.C. § 362. The City demolished the apartment
> complex because the property was condemned as a fire hazard. The
> Debtor was given notice of the proposed condemnation, and notice that
> the City had determined that the apartment complex was a fire hazard.
> The Bankruptcy Court in Blunt found that the City of Jacksonville's actions
> in violation of the automatic stay fell under the government's police and
> regulatory power exception. 210 B.R. at 634.

Id. at 31-32.

In Manuel v. City of Jacksonville (In re Blunt), 210 B.R. 626 (Bankr. M.D. Fla. 1997), the governmental unit demolished the apartment complex owned by the debtor because the complex was a safety hazard. The issue was whether that action was a, "valid exercise of its police or regulatory power." Id. at 634. Recognizing that there were no decisions on the subject in the Eleventh Circuit, the court in Blunt relied on a decision from the Sixth Circuit. The Court in Blunt wrote:

> The Sixth Circuit has ruled that "municipalities' actions in demolishing
> buildings were exercises of their police powers, and are excepted from
> automatic stay pursuant to § 362(a)(4)." Javens v. City of Hazel Park et al.
> (In re Javens), 107 F.3d 359, 370 (6th Cir.1997). Javens further held that
> the bankruptcy court was not required to inquire into circumstances of
> municipalities' proceedings before deciding that the automatic stay did not
> apply. Id. at 365. The Court adopts this position.

Id.

The evidence here established specifically that a new courthouse is necessary to protect the health, safety, or welfare of those who use and work in such a facility because the current facilities do not meet recently recognized security standards. There is no contrary evidence. The evidence also established that the Debtor's property, and other's, is needed to build that courthouse. There is no contrary evidence. And finally, the evidence established that a new courthouse built in accordance with recently recognized security guidelines, would, to the best of abilities, protect the health, safety, or welfare of those who use and work in such a facility. There is no contrary evidence.

Therefore, the Court finds that the County's condemnation of the Debtor's property would be in the furtherance of public health, safety, or welfare of its citizens. Therefore, that action is within the police or regulatory powers of the County. Consequently, the automatic stay that arose when the instant case was filed did not

prevent the County from filing a complaint for condemnation and does not stay that action now.

### VI.  Conclusion

As explained above, in order to obtain the relief he seeks, the debtor must prove that there is a substantial likelihood that he would succeed at a trial on the merits of his request for injunctive relief.  The Court finds that there is _not_ a substantial likelihood that the debtor will succeed on the merits.  Because there is not, the Court can conclude that the debtor is not entitled to the relief requested.  In short, the County is not stayed from proceeding with its condemnation action scheduled for September 8, 2006.

In deciding this matter as it has, this Court recognizes that when Congress created the exceptions that apply to the instant situation, it intended for the state courts to continue to resolve such situations.  Consequently, whatever the debtor will be paid for his property will be, as the law requires, decided by the state court where this matter began, not this Court.

A separate order will be entered in conformity with this memorandum opinion.

Dated:  August 25, 2006 /s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:pb

11